CAPS FUNDING

# ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT is made and entered into this 7th day of May, 2010 by and among Caps Funding LLC, with its place of business located at 113 John Derrick Road, Irmo, South Carolina, 29063 ("hereinafter referred to as the Factor"), Sergio Martinez Jr., individually, and Royal Underground LLC with its place of business located at 11221 Arbor Creek Drive; Apt #418, Richmond, Virginia 23233 ("together hereinafter referred to as the Client").

WITNESSETH:

WHEREAS, Client is engaged in the business of Underground Utilities construction and/or provides services to customers on a credit basis; and

WHEREAS, Client desires to obtain funds for operation of its business through the sale of accounts receivable acceptable to Factor; and

WHEREAS, Factor is willing to purchase acceptable Accounts, as that term is defined hereinafter, from Client at a discount below their face value, according to the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the covenants and conditions set forth herein, and other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows.

1. Whereas Clauses. All "Whereas" Clauses and other matters set out herein above are incorporated herein by reference.

2. Sale of Accounts Receivable. Client shall from time to time, at Client's option, sell, transfer and assign all its right, title and interest in and to Accounts to Factor, together with all moneys due or which may become due upon such Accounts. Accounts shall be identified by separate and subsequent written assignments on a form to be provided to Client by Factor; however, in the absence of such separate written assignment, this Agreement shall be deemed to evidence the assignment of such Accounts sold.

3. Approval. Factor shall not be obligated to purchase any Account from Client. Client shall submit each Account to Factor for approval, which approval may be denied by Factor in its sole discretion, with or without cause.

4. Discount. Factor agrees to purchase Acceptable Accounts from Client at a price equal to Eighty (80%) percent of the face value thereof, (the "Purchase Price").

5. Collection. Upon collection in full by Factor of an Invoice:

a. Fee. Factor shall take its fee. The fee earned Factor for purchasing Accounts are the following percentages of the face amount of the Account Receivable purchased. Calculation is made from the date the advance is paid by Factor to the day factor receives payment.

80% Purchase Price

1. 4% if payment on an Account Receivable is collected between 1 and 30 days; or,
2. 6% if payment on an Account Receivable is collected between 31 and 45 days; or,
3. 8% if payment on an Account Receivable is collected between 46 and 60 days; or,
4. 10% if payment on an Account Receivable is collected between 61 and 75 days; or,
5. 12% if payment on an Account Receivable is collected between 76 and 90 days; or,



EXHIBIT "A"

CBG SM J

6. 20% if payment on an Account Receivable is collected after 90 days.

b. The Rebate will be paid within 4 business days of Factor receiving payment. The Rebate is the money owed to Client after advance is paid and fee is taken out of money received. In the event that any monies are still unpaid after 100 days, Factor may demand monies advanced and fees accrued. The balance will accrue interest at the rate of 18% annually. Any Rebate may be held by Factor, in Factor's sole discretion, as further security for payment of any and all obligations owing by Client to Factor, and applied by Factor against any obligations whatsoever of Client to Factor, whether known or anticipated.

6. Submission of Accounts. When submitting Invoices on Acceptable Accounts for possible purchase by Factor, Client shall forward to Factor one copy of each such Invoice, together with a copy of the billing of lading, proof of delivery, contract or purchase order, and other documents satisfactory to Factor and a properly executed Schedule of Accounts prepared on a form provided by Factor.

7. Full Recourse. Factor shall be entitled to immediate recourse against Client and to demand payment with respect to an Account for the full Purchase Price(s) plus fees paid therefore by the Factor (the "Full Recourse Amount"), when because of a Credit Problem, as defined hereinafter, an Account is not paid in full by a customer when due or within ninety (90) days following payment of the Purchase Price, whichever is less or when:

a. A Credit Dispute, as defined hereinafter, arises, regardless of the validity of any such dispute;

b. Client breaches any warranty, representation or promise in this Agreement, or when any representation or warranty made by Client is untrue;

c. Client contributes to or aggravates in any manner the Credit Problems of a Customer;

d. A Customer alleges a claim of loss or offset of any kind against Client or Factor, regardless of the validity of any such claim or offset;

e. A mistaken, incorrect and/or erroneous Invoice is submitted by Client to Factor; or

f. Any circumstance arises which Factor reasonably believes may delay, prevent, or threaten to delay or prevent payment of the Account or Invoice(s) on an Account in full to the Factor.

8. Remedies. Within three business days following Factor's demand for payment under paragraph number 7 hereinabove, Client will pay Factor the full amount of the demand, regardless of the validity of any such occurrence or event. If Factor does not receive full payment therefore within the time provided herein, Factor shall have, in addition to all other remedies provided for under this Agreement and by law, the right to:

A. Withdraw from and off-set such amount to future Purchase Prices coming due the Client, and to charge-back or sell back the Account to the Client;

b. In its sole discretion, at any time, to notify any Account debtor/customer of Client to make payments directly to Factor, irrespective of whether such Account has been purchased by Factor; and

c. To withdraw from and off-set such amount to any Rebate coming due hereunder.

9. Notice of Dispute. At the time Factor purchases an Invoice, no defense, offset, or counterclaim shall exist with respect thereto. Client shall provide written notice to Factor within twenty four hours of Client obtaining any knowledge from any source of any dispute or disagreement of any kind between the Client and a Customer. Factor shall have the right, but not the obligation, to settle any dispute directly with any Customer; however, any such settlement shall not relieve Client from responsibility for full payment of such Account.



EXHIBIT "A"

10. Property of Factor. Upon Factor's purchase of an Invoice, any and all payments from that customer as to that Account are the sole property of Factor and Client agrees not to interfere with payment thereof by the Customer; however, should Client pay any such Invoice in full to Factor, or should any such Account be charged back or sold back to Client by Factor, then title thereto shall revest in Client.

11. Payments Received by Client. Client warrants and represents that at the time Factor purchases an Invoice, no payment will have been made by the customer for that invoice named therein, either to or for the benefit of the Client. In the event that Client receives a payment which is the property of Factor, Client shall be deemed to have received same in trust for Factor, and Client shall immediately turn over such payment to Factor. In the event that Client receives a payment which is comprised of monies belonging partially to Client and partially to Factor, Client shall immediately turn over said payment, in its original form, duly endorsed over, to Factor, and Factor shall, upon clearance by Factor's bank of the payment instrument, forward a check to Client for Client's portion of the payment.

12. Representations and Warranties of Client. Client hereby represents and warrants that:

a. Royal Underground LLC is validly formed, existing, and in good standing under the laws of the state of Virginia, and is properly licensed and authorized to operate its business under the name of Royal Underground LLC. The Tax ID# of Royal Underground LLC is [redacted]. Sergio Martinez Jr.'s Social Security # is [redacted].

b. To the best of Client's knowledge, each customer of Client is solvent. Client has provided to Factor all documents and information available to Client concerning the business and credit worthiness of each such customer.

c. Client is not insolvent as that term is defined under the bankruptcy law and the Uniform Commercial Code.

d. At the time of purchase of an Account by Factor, Client will be the lawful owner thereof, with good and undisputed title thereto, free and clear of any liens or encumbrances. Each Account shall represent an accurate and undisputed statement of indebtedness owed to Client by a customer for a sum certain which is due and payable in net 30 days or less, arising out of a bona fide sale, delivery and acceptance of merchandise or performance of service by Client to Customer in the ordinary course of Client's business, and no person, firm or corporation shall have any lien on, or claim to, such accounts or to the merchandise described thereon or any part thereof.

e. Client shall furnish Factor with full financial statements and other documents and information, including but not limited to proof of payment and/or compliance with all Federal, State and/or local tax requirements, as may be reasonably requested by Factor from time to time;

f. Client shall notify Factor in writing immediately after obtaining any knowledge from any source of the filing, recording or perfection by any means of any non-consensual lien, claim, levy, attachment, encumbrance or other court or legal proceeding or process against Client or any Customer, or against any property of Client or of any Customer.

g. Client does not and will not in any manner, whether directly or indirectly, own, control or exercise dominion over the business of any Account debtor/customer to be offered or sold by Client to Factor.

h. Each and every document, statement, record, book, account, and invoice, and all information, whether financial or otherwise, provided to Factor by Client, whether heretofore or hereafter, shall be true, accurate and correct.

i. Client shall not, under any circumstances, interfere with Factor's rights under this

Agreement in any manner whatsoever unless permitted by law.

j. Client will not sell, factor, or assign accounts except to Factor during the term of this Agreement and/or for as long as any indebtedness whatsoever remains owing by Client to Factor, and Client has not heretofore sold, factored, assigned or
encumbered any account or accounts which are or may become subject to this Agreement.

k. Client has not and shall not transfer, assign, or pledge any of its factored invoices, and shall not grant a security interest therein, to any party other than Factor.

l. Client shall not alter, modify, or extend in any manner the terms of the original account with a customer, including but not limited to the maximum credit limit or the time within which payment is to be made, without first obtaining Factor's written consent to such change.

m. Client has not transferred, pledged or granted a security interest in its assets, or any of them, which Client has not fully disclosed in writing to Factor.

n. Client has not permitted and shall not permit any lien, encumbrance or security interest to be created upon its assets, or any of them, including but not limited to its factored accounts receivable, without the prior written consent of Factor.

o. Client shall maintain its assets in good order and repair and shall maintain a policy or policies of insurance thereon satisfactory to Factor and client of Client.

p. Client shall not sell, assign, pledge or encumber this Agreement or any rights whatsoever hereunder. Factor shall not sell or discount invoices without written consent of Client

q. Client shall, immediately upon the sale of invoices to Factor, make a proper entry or entries on its books and records, fully disclosing the sale of said accounts to Factor.

r. Client will maintain such insurance covering Client's business and/or the property of Client's Customers as is customary for businesses similar to the business of Client and, at the request of Factor, name Factor as loss payee of such insurance.

s. Client will notify Factor in writing prior to any change in the location of Client's place(s) of business or, if Client has or intends to acquire any additional place(s) of business, or prior to any change in Client's chief executive office, the office or offices where Client's books and records concerning accounts are located.

t. Client will immediately notify Factor in writing of any proposed change of Client's name, identity, legal entity, corporate structure, use of additional trade name(s), and/or any proposed change in any of the officers, principals, partners, and/or owners of Client.

u. At the time of submitting Invoices on an Account to the Factor for possible purchase, the Client will have paid all transportation and carrier charges in full.

13. Security. As a further inducement for Factor to enter into this Agreement, Client hereby grants to Factor, as collateral for the payment or repayment of any and all Client's obligations, a security interest under the Uniform Commercial Code for the state of South Carolina, in all of Client's presently existing or hereafter arising, now owned or hereafter acquired, Factored Accounts Receivables, instruments, money deposit accounts, general intangibles, insurance policies, goods, inventory, equipment and vehicles, to be and remain effective during any time when any indebtedness or obligation whatsoever exists by Client to Factor. Client shall not sell, transfer or otherwise convey or dispose of any of said property. It is understood and agreed that Factor will not release its security interest in any collateral described herein.

14. Limited Power of Attorney. In order to facilitate performance of this Agreement, Client irrevocably appoints Factor, or any person designated by Factor, as its attorney in fact, which said appointment shall remain in full force and effect until all Accounts sold to Factor have been paid in full and all obligations of Client to Factor have been fully discharged, with power as follows:



CBG

a. Strike or cover Client's address on all Invoices and statements of account mailed or to be mailed to customers and to substitute thereon Factor's name and address which is P. O. Box 75, Ballentine, South Carolina 29002-0075;

b. Receive and open all mail addressed to Client, or to Client's trade name at Factor's address;

c. Endorse the name of Client or Client's trade name on any checks or other evidences of payment that come into Factor's possession on Accounts sold to Factor by Client or on which Factor holds a security interest and on any invoices or other documents relating to any of such accounts, and deposit same into any account of Factor;

d. In Client's name, or otherwise, demand, sue for, collect, and, subject to Client's prior written approval, give releases for, any and all monies due or coming due on accounts purchased by or pledged to Factor;

e. Compromise, settle, prosecute or defend any action, claim or proceeding concerning accounts purchased by or pledged to Factor; and

f. Do any and all things reasonably necessary and proper to carry out the purpose and intent of this Agreement.

15. Notice to Customers. Factor or Client may place labels, stickers, or stamps on the face of all invoices, bills, notices, statements, and shipping documents relating to accounts sold or pledged to Factor stating that the account or accounts have been sold and assigned to Factor and are payable only to Factor.

16. Inappropriate Payments. Should Factor receive a double payment on an account or other payment which Factor is incapable of identifying, Factor shall carry these sums as open items and shall return them to Client or to the Customer upon proof satisfactory to the Factor of the right thereto. If, however, such proof is not received within six (6) months following Factor's receipt of the payment, Factor shall have the right to consider such payments or unidentified items as credits toward any outstanding obligations or indebtedness of Client to Factor.

17. Maximum Amount. It is specifically understood and agreed that Accounts purchased by Factor and not yet paid shall not exceed the total sum of one hundred fifty thousand ($150,000.00) dollars at any time.

18. Default. Any one or more of the following shall represent a default under this Agreement:

a. The failure of client to pay any indebtedness to Factor within 90 days;

b. The breach by Client of any term, provision, warranty or representation made hereunder or under any other agreement between Factor and Client;

c. The appointment of a receiver or trustee of all or a substantial portion of the assets of the Client, the insolvency of Client or the inability of Client to pay debts as they mature, or an assignment by Client for the benefit of creditors, or the voluntary or involuntary filing of a petition in bankruptcy court or a similar proceeding in any court;

d. The filing or service of any levy, attachment, execution, tax assessments or similar process affecting or which could threaten the collateral; or

e. The furnishing at anytime to Factor of a materially false or inaccurate document, representation, warranty, or other information, whether financial or otherwise.

19. Remedies. In the event of a default, Factor shall have the right to do the following, in addition to any other remedies provided by law:

a. Declare any and all indebtedness secured hereby to be immediately due and payable or the right to cure defects;

b. Enforce the security interest granted hereunder;

c. Require Client to assemble the Collateral and the records pertaining to all accounts and produce them to Factor at such time and place as Factor designates;

d. Enter the Client's premises with the consent of the Client and take possession of the Collateral and of all records pertaining to the accounts and any other Collateral;

e. Grant extensions, compromise claims and settle disputes with respect to the invoices purchased by Factor, irrespective of the price of methods of payment, all with written prior notice to or permission of Client;

f. In connection with the assembly and/or disposition of any Collateral, to use any trademark, trade name, trade style, copyright, patent right or technical process used or utilized by Client; and

g. Return to Client any surplus realized and hold Client liable for any deficiency as provided in the Uniform Commercial Code for the state of South Carolina or by state law.

20. Confidentiality. Factor acknowledges that any knowledge or information relating to Client is valuable, proprietary and confidential in nature, and Factor agrees to maintain the confidentiality of such information.

21. Non-Compete. Factor agrees that it will not for a period of five (5) years from the date of execution of this Agreement, own, in whole or in part, consult with, be employed by, or otherwise engage or participate in any business in competition with Client's Business, induce or attempt to induce any employee, client, customer or consultant of Client to terminate or alter their relationship with Client, or disparage the business reputation or financial condition of Client; however, nothing contained herein shall prohibit Factor from offering the same or similar services to any prospective client and entering into this same or a similar agreement with any new client of Factor with Client's written approval.

22. Termination. This Agreement shall continue in full force and effect until terminated by thirty days (30) prior written notice by either party; provided, however, that no such termination shall terminate or otherwise affect Client's obligations hereunder incurred or accrued prior to such termination. Following any termination, Client shall remain fully liable to Factor for any accounts purchased before such termination, and Factor will continue to hold a security interest in Client's factored accounts and other collateral mentioned above until all existing indebtedness of Client to Factor has been paid in full or otherwise satisfied.

23. The following terms shall have the following meanings when used in this Agreement:

a. "Acceptable Account" means an Account conforming to the warranties and terms set forth herein, and otherwise acceptable to Factor.

b. "Account" or Accounts Receivable" mean any and all rights to receive payment for services rendered to a customer of client , which is not evidenced by an instrument or chattel paper, as those terms are defined in the Uniform Commercial Code for the state of South Carolina.

c. "Collateral" means the tangible and intangible property given as security for the obligations of Client under this Agreement.

d. "Credit Dispute" means a claim by Customer against Client of any kind whatsoever that reduces the amount collectible from Customer by Factor, arising from any kind of disagreement between Customer and Client whatsoever, valid or invalid, at any time, both before and/or after the signing of this Agreement or the purchase of the account.

e. "Credit Problem" means a customer is unable to pay his debts because of insolvency, the filing of a voluntary petition in bankruptcy, the quitting of business and the like.

f. "Customer" means Client's customer or account debtor.

g. "Invoice" means an invoice on an Acceptable Account, conforming to the warranties and terms set forth herein, and otherwise acceptable to Factor.

h. "Rebate" means the invoice amount less the advance and the accumulated fees.

i. "Warranty" means to guarantee, as a material element of this Agreement. Each separate warranty herein is also an independent condition to Factor's performance and duties under this

Agreement,

24. Indemnification. Factor will work with Client in an attempt to collect uncollected funds from a factored account. In the event that Factor and Client, together, are unable to collect uncollected funds, Client shall indemnify and hold Factor harmless against any and all liability, claim, demand, ill-will and damage arising from Factor's collecting or attempting to collect any account, provided that Factor has complied with all applicable laws in its collection efforts, from the failure of Client to pay withholding taxes due and payable to any taxing authority, and from any loss, including but not limited to the Purchase Price paid by Factor and, when appropriate, the Factor's fee, arising from the failure of any customer to pay its account in full, including all costs and reasonable attorneys' fees incurred in enforcing this paragraph.

25. Miscellaneous.

a. Waivers. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein or and in any documents delivered in connection herewith. No waiver by any party hereto of any right or remedy shall be effective unless in writing and signed by the party waiving said right or remedy. A waiver of a right or remedy under this Agreement is not a waiver of the right or remedy on any subsequent occasion.

b. Notices. All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be delivered or mailed, by first class mail, postage prepaid, to the party at the address set out hereinabove or to such other address as such party shall have specified by notice in writing to the other party. Any such notice shall be deemed to have been received on the date of actual receipt.

c. Sections and Other Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretations of this Agreement.

d. Governing Law. This agreement, and all transactions contemplated hereby, shall be governed by, construed, and enforced in accordance with the laws of the State of South Carolina. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Richland County, State of South Carolina. In the event that litigation results from or arises out of this Agreement or the performance hereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

e. Effective Date. This Agreement shall become effective upon acceptance and execution hereof by Factor's authorized representative.

f. Reliance by Factor. All representations and warranties made by Client herein and in the Preliminary Evaluation Report are true and correct and Client acknowledges and understands that Factor has relied thereon in entering into this Agreement.



CBG [signature]

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of this 7th day of May, 2010, and have hereunto set their hands and seals.
SIGNED, SEALED, AND DELIVERED IN THE PRESENCE OF:

Witness: ______________ ______________
CAPS FUNDING LLC

Witness: ______________

Witness: ______________ ______________
SERGIO MARTINEZ, Jr.

Witness: ______________

Witness: ______________ ROYAL UNDERGROUND LLC

Witness: ______________ ______________
SERGIO MARTINEZ, Jr.

STATE OF SOUTH CAROLINA ) PROBATE
COUNTY OF RICHLAND )

PERSONALLY appeared before me the undersigned witness who, being duly sworn, says (s)he saw the within named CAPS FUNDING LLC, sign, seal, and deliver the within Accounts Receivable Purchase Agreement, and that (s)he with the other witnesses whose signatures appears above, witnessed the execution thereof.

SWORN to before me this 7th day of May, 2010

______________ ______________
WITNESS

NOTARY PUBLIC FOR STATE OF SC. MY commission expires: 11/20/2010

STATE OF SOUTH CAROLINA ) PROBATE
COUNTY OF RICHLAND )

PERSONALLY appeared before me the undersigned witness who, being duly sworn, says (s)he saw the within named SERGIO MARTINEZ, Jr., sign, seal, and deliver the within Accounts Receivable Purchase Agreement, and that (s)he with the other witnesses whose signatures appears above, witnessed the execution thereof.

SWORN to before me this 7th day of MAY, 2010

______________ ______________
WITNESS

NOTARY PUBLIC FOR STATE OF SC MY commission expires: 11/20/2010



CBB SM

STATE OF SOUTH CAROLINA ) PROBATE
COUNTY OF RICHLAND )

PERSONALLY appeared before me the undersigned witness who, being duly sworn, says (s)he saw the within named ROYAL UNDERGROUND LLC by SERGIO MARTINEZ, Jr., ITS DULY SIGNED OFFICER, sign, seal, and deliver the within Accounts Receivable Purchase Agreement, and that (s)he with the other witnesses whose signatures appears above, witnessed the execution thereof.

SWORN to before me this 7th day of MAY, 2010

WITNESS

NOTARY PUBLIC FOR STATE OF SC MY commission expires: 11/20/2010